# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-23879-CIV-ALTONAGA/O'Sullivan

**FEDERAL TRADE COMMISSION**,

   Plaintiff,

vs.

**CENTRO NATURAL CORP.**, *et al*.,

   Defendants, and

**BIONORE INC.**, *et al*.,

   Relief Defendants.

_____/

### PRELIMINARY INJUNCTION AS TO DEFENDANTS, CENTRO NATURAL CORP, CAROLINA ORELLANA, AND DAMIAN BIONDI, AND RELIEF DEFENDANTS, BIONORE INC. AND ALLIANZA INMOBILIARIA CORP.

On October 20, 2014, Plaintiff, the Federal Trade Commission ("FTC"), filed a Complaint for Permanent Injunction and Other Equitable Relief [ECF No. 1] pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*; and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. Plaintiff also filed an *Ex Parte* Motion for a Temporary Restraining Order and for an Order to Show Cause Why a Preliminary Injunction Should Not Issue. [ECF No. 4]. The Court issued a Temporary Restraining Order with an asset freeze and appointed a temporary receiver against Defendants, Centro Natural Corp. ("Centro Natural"), Sumore, L.L.C. ("Sumore"), Carolina Orellana ("Orellana"), Damian Biondi ("Biondi"), Javier Sumbre ("Sumbre"), and Jessica Anzola ("Anzola"); and Relief Defendant, Bionore Inc. ("Bionore"). [ECF No. 10]. On October 27, 2014, the FTC filed a First Amended Complaint for Permanent

Injunction and Other Equitable Relief ("Amended Complaint") [ECF No. 14], adding Defendant, Susana Sumbre ("Susana"), and Relief Defendants, Jorge Sumbre ("Jorge"), Jager International, Inc.("Jager"), and Allianza Inmobiliaria Corp. ("Allianza").

On November 25, 2014, the FTC filed a Motion for Preliminary Injunction Against the Liability Defendants, Centro Natural, Sumore, Orellana, Biondi, Sumbre, Anzola, and Susana ("First Motion") [ECF No. 66]; and a Motion for Preliminary Injunction Against Relief Defendants, Bionore, Jorge, Jager, and Allianza. ("Second Motion") [ECF No. 67]. Orellana, Biondi, and Bionore filed a Response . . . ("Bionore Response") [ECF No. 92] on December 4, 2014. Allianza filed a Response . . . ("Allianza Response") [ECF No. 100] on December 12, 2014. The FTC filed replies (*see* [ECF Nos. 103, 115] in support of the First and Second Motions.

The Court entered a Stipulated Preliminary Injunction as to Defendants, Sumbre, Anzola, and Sumore [ECF No. 131]; and as to Defendant, Susana; and Relief Defendants, Jorge and Jager [ECF No. 143]. Thereafter, the FTC's Motions for Preliminary Injunction remained pending against Defendants, Centro Natural, Orellana, and Biondi (collectively, the "Litigating Defendants"); and Relief Defendants, Bionore and Allianza (collectively, the "Litigating Relief Defendants").

The Court conducted a preliminary injunction evidentiary hearing ("Hearing") on January 7, 2015 [ECF No. 140], and January 21, 2015 [ECF No. 147]. Having considered the Complaint and Amended Complaint, filings, testimony, declarations, exhibits, memoranda, and argument presented by the parties, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper. Defendants, Orellana and Biondi, have sufficient minimum contacts with the United States for the Court to exercise personal jurisdiction over them, as the FTC Act provides for worldwide service of process. *See U.S. Secs. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) (footnote call number omitted).

2.      Orellana and Biondi have not been served with the Complaint (*see* Bionore Resp. 5). However, pursuant to Federal Rule of Civil Procedure 65, "a party [must] have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order." *Louis Vuitton Malletier, S.A. v. 2013lvshop.com*, No. 14-61698-CIV, 2014 WL 3735942, at *6 n.3 (S.D. Fla. July 29, 2014) (alteration added; citations omitted); *see also H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (upholding temporary restraining order and preliminary injunction over foreign party not yet properly served "because formal service of process under the Hague Convention or other provisions of law can take months"). Orellana and Biondi have notice of the First Motion and the Hearing, as they filed a response in opposition (*see* Bionore Resp.), and their attorney appeared at the Hearing. Accordingly, a preliminary injunction order may be entered against Orellana and Biondi.

3.      Further, the Court determines this preliminary injunction can permissibly impact third parties not named as parties to the suit. (*See* Bionore Resp. 7–8 (arguing such impact is improper)). Courts routinely include such third parties in orders granting injunctive relief. *See, e.g., Fed. Trade Comm'n v. IAB Mktg. Assocs., LP*, No. 12-61830-CIV, 2012

WL 4936087, at *8 (S.D. Fla. Oct. 9, 2012) (imposing duties upon "any financial or brokerage institution" and other non-parties).

4. "For the FTC to obtain injunctive relief, it must show that (1) it is likely to succeed on the merits, and (2) injunctive relief is in the public interest." *Fed. Trade Comm'n v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1232 (11th Cir. 2014) (citation omitted).

5. There is good cause to believe Sumore and the Litigating Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FDCPA, 15 U.S.C. §§ 1692–1692p; and the FTC's Trade Regulation Rule titled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310. The FTC is therefore likely to prevail on the merits of this action. The FTC has shown these violations through record evidence of consumer declarations, transcripts of calls with and from the Defendants, consumer complaints, transcripts of depositions of Defendants and Relief Defendants, additional documentation, and other evidence.

6. The FTC has established a likelihood of success on the merits of its claim Sumore and the Litigating Defendants made material misrepresentations leading consumers to believe they are facing legal action and other consequences if they fail to pay an alleged debt. Defendants caused phone calls to be made to consumers, recordings of which repeatedly indicate material misrepresentations in violation of the FTC Act and the FDCPA. (*See* Am. Compl.). The recordings of the Spanish-language calls were played during the Hearing, and English translations of the calls were provided. The FTC also presented evidence at the Hearing Orellana and Biondi learned of consumer complaints about these material misrepresentations. (*See* Pl.'s Ex. 45 [ECF No. 69-1] 50:7–51:17).

7.    The FTC has established a likelihood of success on the merits of its claim Sumore and the Litigating Defendants have violated the TSR by engaging in deceptive and abusive call tactics and disregarding the TSR requirements regarding the Do Not Call Registry. (*See* Am. Compl.).  In addition to evidence of material misrepresentations, the FTC presented evidence at the Hearing Biondi learned of the TSR requirements imposed on telemarketers, but Defendants did not comply with the TSR. (*See* Pl.'s Ex. 53 [ECF No. 93-4] 31).

8.    The FTC has established a likelihood of success in showing that, using the unlawful acts and practices alleged in the Amended Complaint, Sumore and the Litigating Defendants have taken at least $3 million from consumers between 2011 and 2014. (*See* Declaration . . . [ECF No. 70] 1–2).

9.    There is good cause to believe immediate and irreparable harm will result from the Litigating Defendants' violations of Section 5(a) of the FTC Act, the FDCPA, and the TSR unless the Litigating Defendants are restrained and enjoined by Order of this Court.

10.   The FTC has shown a likelihood of success in proving Bionore and Allianza received ill-gotten funds without providing consideration in return.  The FTC presented evidence Sumore's business model involved extensive fraud perpetrated upon consumers. (*See, e.g.,* Declaration . . . 3 [ECF No. 70]).  Bionore was formed and controlled by Orellana and Biondi. (*See* Pl.'s Ex. 24 [ECF No. 31-5]).  It received funds from Defendants that were linked to fraudulent activities and for which it did not receive consideration. (*See* Pl.'s Ex. 45, 40:5–23 [ECF No. 69-1]).  Furthermore, the FTC demonstrated Allianza received funds from Sumore although no business relationship existed between Allianza and Sumore. (*See* Pl.'s Ex. 48, 15:12–16:1 [ECF No. 69-7]).  Allianza does not

specifically address this record evidence; instead, it argues the difficulty of transferring money in Argentina explains the Sumore-Allianza transfer. (*See generally* Allianza Resp.). But this does not sufficiently rebut the FTC's evidence of a lack of business relationship between the entities, and the fact Allianza relies on an unsworn declaration of Jorge (*see* Declaration . . . [ECF No. 111-1]), further diminishes the persuasiveness of its argument.

11. Good cause exists for: (a) the appointment of a Receiver over Defendant, Centro Natural, and over Relief Defendant, Bionore; (b) the freezing of the Litigating Defendants' and the Litigating Relief Defendants' Assets; and (c) the ancillary relief ordered below. A freezing of the assets of Bionore is permissible because the FTC demonstrates all of Bionore's assets are likely to be disgorged for consumer redress. *See Fed. Trade Comm'n v. Strano*, 528 F. App'x 47, 50 (2d Cir. 2013) (summary order) ("'To obtain a preliminary injunction freezing the assets of such a relief defendant, plaintiffs must demonstrate only that they are likely ultimately to succeed in disgorging the frozen funds.'" (quoting *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) (brackets and additional citation omitted))). Orellana and Biondi's exercise of control over Bionore indicates Orellana and Biondi "so dominated the subject properties held in [Bionore's] name as to support their eventual disgorgement." *Id.* (alteration added). An asset freeze is appropriate equitable relief permitted by the FTC Act. *See id.* at 49 n.2 (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332–33 (1999)).

12. Placing Bionore into receivership is appropriate because evidence indicates Orellana and Biondi control or have the opportunity to control it. (*See* Pl.'s Ex. 24 [ECF No. 31-5]).

The management of Bionore "has defrauded members of the [] public; in such cases, it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of" victims. *Secs. & Exch. Comm'n v. First Fin. Grp. of Texas*, 645 F.2d 429, 438 (5th Cir. Unit A 1981) (alteration added; footnote call number omitted).

13.    The Court has weighed the equities and considered the FTC's likelihood of ultimate success on the merits. It is in the public interest that the Court enter a preliminary injunction that: (1) enjoins and restrains the Litigating Defendants from engaging in further unlawful conduct; (2) imposes a freeze on the Assets of the Litigating Defendants and Litigating Relief Defendants; (3) appoints a Receiver over Defendant, Centro Natural, and over Relief Defendant, Bionore to marshal and preserve their Assets, and manage their business affairs; and (4) requires Litigating Defendants and Litigating Relief Defendants to fully disclose all their Assets. An injunction is in the public interest in order to prevent further harm to consumers, to preserve assets for eventual consumer redress, and to prevent waste of the Litigating Defendants' and Litigating Relief Defendants' current assets.

14.    The FTC is an independent agency of the United States of America and no security is required of any agency of the United States for issuance of a temporary restraining order. *See* Fed. R. Civ. P. 65(c).

## II.  DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

1.  **"Asset"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant, including such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

2.  **"Assisting Others"** means providing substantial assistance or support, including any of the following goods or services, to another entity: (1) performing customer service functions, including charging consumers for products or services, or receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing or providing marketing or billing services of any kind; (5) processing credit and debit card payments; or (6) acting as an officer or director of a business, corporation or other entity.

3.  **"Debt Collection"** means any attempt to collect, directly or indirectly, debts owed or asserted to be owed, or due.

4. **"Defendants"** means Centro Natural Corp.; Sumore, L.L.C.; Carolina Orellana; Damian Biondi; Javier Sumbre; Jessica Anzola; and Susana Sumbre individually, collectively, or in any combination.

5. **"Document" or "Documents"** includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, Web pages, Web sites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements (including advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and any other electronically stored information, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

6. **"Litigating Defendants"** means Centro Natural Corp., Carolina Orellana, and Damian Biondi individually, collectively, or in any combination.

7. **"Litigating Relief Defendants"** means Bionore Inc. and Allianza Inmobiliaria Corp. individually, collectively, or in any combination.

8. **"Person"** means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

9. **"Plaintiff"** or **"Commission"** or **"FTC"** means the Federal Trade Commission.

10.  **"Receiver"** means the receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the temporary receiver.

11. **"Receivership Defendants"** means Defendants, Centro Natural Corp. and Sumore, L.L.C.; and Relief Defendant, Bionore Inc.

12. "**Relief Defendants**" means Bionore Inc.; Allianza Inmobiliaria Corp.; Jager International, Inc.; and Jorge Sumbre individually, collectively, or in any combination.

13.  **"Telemarketer"** means any Person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

14. "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## III.  BAN REGARDING DEBT COLLECTION

**IT IS HEREBY ORDERED** that the Litigating Defendants are restrained and enjoined from engaging in Debt Collection or assisting others engaged in Debt Collection, whether directly or through an intermediary.

## IV.  BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that the Litigating Defendants are restrained and enjoined from engaging in Telemarketing or assisting others engaged in Telemarketing, whether directly or through an intermediary.

## V.  PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

 **IT IS FURTHER ORDERED** that the Litigating Defendants and Litigating Relief Defendants, their agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting

directly or indirectly, in connection with the sale of any good or service, are hereby temporarily restrained and enjoined from:

A.  Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, email address, or other identifying information of any Person who paid money to a Defendant or who were contacted or are on a list to be contacted by any Defendant; and

B.  Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, email address, or other identifying information of any Person who paid money to a Defendant or who were contacted or are on a list to be contacted by any Defendant; and

C.  Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or about whom any Defendant obtained such information in connection with any activity that pertains to the subject matter of this Order.

**PROVIDED**, however, that the Litigating Defendants and Litigating Relief Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## VI.  ASSET FREEZE

**IT IS FURTHER ORDERED** that the Litigating Defendants and Litigating Relief Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

1.    owned, controlled or held, in whole or in part, by any Defendant or Relief Defendant;

2.    held, in whole or in part, for the direct or indirect benefit of, any Defendant or Relief Defendant;

3.    in the actual or constructive possession of any Defendant or Relief Defendant;

4.    held by an agent of any Defendant or Relief Defendant as a retainer for the agent's provision of services to Defendants or Relief Defendant;

5.    owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any of the Defendants or Relief Defendant, or of which any Defendant or Relief Defendant is an officer, director, member, or manager. This includes any Assets held by, for, or subject to access by, any of the Defendants or Relief Defendant at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title company, insurance company, commodity trading company, precious metal dealer, payment processor, credit card processor, acquiring bank, merchant bank, independent sales organization, third party processor, payment gateway or other financial

institution or depository of any kind; or

6. held in any account for which any Defendant or Relief Defendant is, or was on the date that this Order was signed, an authorized signor.

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or Relief Defendant, either individually or jointly, or subject to access by any Defendant or Relief Defendant, except as specifically authorized by the Receiver in writing.

C. Obtaining a personal or secured loan encumbering the Assets of any Defendant or Relief Defendant, or subject to access by any Defendant or Relief Defendant;

D. Incurring liens or other encumbrances on real property, personal property, or other Assets in the name, individually or jointly, of any Defendant or Relief Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or Relief Defendant; or

E. Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Defendant or Relief Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or Relief Defendant or of which any Defendant or Relief Defendant is an Officer, Director, Member, or Manager. This includes any corporate bank card or corporate credit card account for which any Defendant or Relief Defendant is, or was on the date that this Order was signed, an authorized signor.

**PROVIDED** that the Assets affected by this Section shall include: (a) all Assets of the Receivership Defendants; and (b) all Assets of Defendants, Orellana, Biondi, Sumbre, Anzola, and Susana; and of Relief Defendants, Jorge, Allianza, and Jager, existing as of the date the

Temporary Restraining Order was entered; or acquired by Orellana, Biondi, Sumbre, Anzola, and Susana; or by Relief Defendant, Jorge, following the entry of the Temporary Restraining Order, if such Assets are derived from any activity that is the subject of the Amended Complaint or that is prohibited by this Order.

## VII.  DUTIES OF HOLDERS OF DEFENDANTS AND RELIEF DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any financial or brokerage institution, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person served with a copy of this Order that (a) holds, controls, or maintains custody of any account or Asset of any Litigating Defendant or Litigating Relief Defendant, (b) holds, controls, or maintains custody of any Asset associated with credits, debits or charges made on behalf of any Litigating Defendant or Litigating Relief Defendant, including reserve funds held by payment processors, credit card processors, payment merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies or other entities, or (c) has held, controlled, or maintained custody of any such account or Asset at any time since the date of entry of this Order shall:

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Assets, as well as all Documents or other property related to such Assets, except by further order of this Court;

B.      Deny any Person, except the Receiver acting pursuant to this Order, access to any safe deposit box, commercial mail box (including but not limited to the following Postal Office

Boxes: P.O. Box 3236, Hallandale, FL 33008; P.O. Box 2905, Hallandale, FL 33008), or storage facility that is:

    1.    titled in the name of any Litigating Defendant or Litigating Relief Defendant, either individually or jointly; or

    2.    otherwise subject to access by any Litigating Defendant or Litigating Relief Defendant;

C.    Provide the FTC's counsel and the Receiver, within five (5) days of receiving a copy of this Order, a sworn statement setting forth:

    1.    the identification number of each account or Asset:

        a)  titled in the name, individually or jointly, of any Litigating Defendant or Litigating Relief Defendant;

        b)  held on behalf of, or for the benefit of, any Litigating Defendant or Litigating Relief Defendant; or

        c)  associated with credit or debit charges made on behalf of any Litigating Defendant or Litigating Relief Defendant;

    2.    the balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person or entity to whom such account or other Asset was remitted; and

    3.    the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any

Litigating Defendant or Litigating Relief Defendant, or is otherwise subject to access by any Litigating Defendant or Litigating Relief Defendant; and

D.     Upon the request of the FTC or the Receiver, promptly provide the FTC and the Receiver with copies of all records or other Documentation pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to such safe deposit boxes, commercial mail boxes and storage facilities.

## VIII. FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that each Litigating Defendant and Relief Defendant, Bionore, within five (5) days of service of this Order upon them, shall prepare and deliver to Counsel for the Commission and the Receiver:

A.     Completed financial statements on the Financial Statement of Individual Defendant [ECF No. 4-1] for themselves individually, and on the Financial Statement of Corporate Defendant [ECF No. 4-2] for each business entity under which they conduct business or of which they are an officer, and for each trust for which any Litigating Defendant or Relief Defendant, Bionore, is a trustee.  The financial statements shall be accurate as of the date of entry of this Order and signed under penalty of perjury.  Litigating Defendants and Relief Defendant, Bionore, shall include in the financial statements all information requested in the statements, including a full description of all funds and Assets, whether located inside or outside of the United States, that are: (a) titled in the name of any Defendant or Relief Defendant, jointly, severally, or individually; (b) held by any Person or entity for the benefit of any Defendant or

Relief Defendant; or (c) under the direct or indirect control of any Defendant or Relief Defendant. Litigating Defendants and Relief Defendant, Bionore, shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements;

B.     A completed statement, signed under penalty of perjury, of all payments, transfers, or assignments of Assets worth $1,000 or more since 2011. Such statement shall include:  (1) the amount transferred or assigned; (2) the name of each transferee or assignee; (3) the date of transfer or assignment; and (4) the type and amount of consideration paid to the Litigating Defendant or Litigating Relief Defendant. Each statement shall specify the name and address of each financial institution and brokerage firm at which the Litigating Defendant or Litigating Relief Defendant has accounts or safe deposit boxes. These statements shall include Assets held in foreign and domestic accounts; and

C.     A completed IRS Form 4506 [ECF No. 4-4], requesting tax returns for the years 2011–2014 be sent to counsel for the FTC at the following address:

Janice L. Kopec
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop CC-8528
Washington, DC 20580
(202) 326-2550

## IX. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, Litigating Defendants and Litigating Relief Defendants shall:

A. Provide the Commission and the Receiver with a full description, verified under oath and accurate as of the date of this Order, of all funds, Documents, and Assets outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant or Relief Defendant; or (2) held by any Person or entity for the benefit of any Defendant or Relief Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant or Relief Defendant; and

B. Provide the Commission and Receiver access to all records of accounts or Assets of any Defendant or Relief Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records [ECF No. 4-3].

C. Transfer to the territory of the United States and deliver to the Receiver all funds, Documents, and Assets located in foreign countries which are: (1) titled in the name individually or jointly of any Defendant or Relief Defendant; or (2) held by any Person or entity, for the benefit of any Defendant or Relief Defendant; or (3) under the direct or indirect control of any Defendant or Relief Defendant, whether jointly or singly; and

D. The same business day as any repatriation, (1) notify counsel for the Commission of the name and location of the financial institution or other entity that is the recipient of such funds, Documents, or Assets; and (2) serve this Order on any such financial institution or other entity.

## X. INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Litigating Defendants and Litigating Relief Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.       Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants and Relief Defendants' Assets have been fully repatriated pursuant to this Order; or

B.       Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants and Relief Defendants' Assets have been fully repatriated pursuant to this Order.

## XI. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency served with this Order shall promptly furnish consumer reports as requested concerning any Litigating Defendant or Litigating Relief Defendant to counsel for the Commission.

## XII.  PRESERVATION OF RECORDS AND REPORT OF
## NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Litigating Defendants and Litigating Relief Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or Personal finances of any Defendant or Relief Defendant, (2) the business practices or finances of entities directly or indirectly under the control of any Defendant or Relief Defendant, or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant or Relief Defendant, including:  any and all marketing materials, Internet pages, consumer complaints, call detail records, telephone logs, telephone scripts, contracts, correspondence, email, corporate books and records, accounting data, financial statements, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, calendars, appointment books, and tax returns;

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' and Relief Defendants' incomes, disbursements, transactions, and use of the Defendants' and Relief Defendants' Assets; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing counsel for the Commission with a written statement disclosing: (1) the name of the business entity; (2) the

address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIII. APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Scott Dimond is appointed Receiver for the Receivership Defendants and any of their affiliates, subsidiaries, divisions, or telephone sales or customer service operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court.

## XIV. RECEIVER'S DUTIES AND AUTHORITIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.      Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents of the Receivership Defendants and other Persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the Receivership Defendants' income and profits and all sums of money now or hereafter due or

owing to the Receivership Defendants. **PROVIDED**, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

C.     Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Defendants operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all Receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including the name, home address, Social Security Number, job description, company history, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and videotaping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any internet access or other means of access to the computers, internet or records maintained at that location; and (6) requiring any Persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such Persons are not removing from the premises Documents or Assets of the Receivership Defendants.

D.     Law enforcement personnel, including police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

E.      Conserve, hold, and manage all Assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including determining the available Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

F.      Enter into and cancel contracts, and purchase insurance as advisable or necessary;

G.      Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.      Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents, provided that the Receiver shall suspend business operations of the Receivership Defendants if, in the judgment of the Receiver, such operations cannot be continued legally or profitably;

I.      Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Receivership Defendants;

J.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation

incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

L.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

M.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N.     Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate;

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties;

P.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

R.      File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

## XV.  TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Litigating Defendants and Litigating Relief Defendants, their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and any other Person with possession, custody or control of property or of records relating to the Receivership Defendants shall upon notice of this Order by personal service or otherwise immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.      All Assets of the Receivership Defendants;

B.      All Documents of the Receivership Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents and other papers;

C.      All computers, electronic devices and machines and data in whatever form used to conduct the business of the Receivership Defendants;

D.      All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Defendants; and

E.      All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of the Receivership Defendants, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any Person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non- Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XVI. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that the Litigating Defendants and Litigating Relief Defendants shall provide to the Receiver, immediately upon request, the following:

A.        A list of all Assets and property, including accounts, of the Receivership Defendants that are held in any name other than the name of a Receivership Defendant, or by any Person or entity other than a Receivership Defendant; and

B.        A list of all agents, employees, officers, servants or those Persons in active concert and participation with the Defendants, who have been associated or done business with the Receivership Defendants.

## XVII. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Litigating Defendants and Litigating Relief Defendants, their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and any other Person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets of the Receivership

Defendants. This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; advising all Persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Defendants. The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies and other financial institutions and depositories of any kind, as well as all common carriers, telecommunications companies and third-party billing agents.

## XVIII. PROHIBITION ON INTERFERENCE WITH THE RECEIVER'S WORK

**IT IS FURTHER ORDERED** that Litigating Defendants and Litigating Relief Defendants, their officers, agents, servants, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, are hereby restrained and enjoined from:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this Receivership;

B.      Transacting any of the business of the Receivership Defendants;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or

custody of, or in which an interest is held or claimed by, the Receivership Defendants or the Receiver; and

D.     Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XIX.  STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the Receivership ordered herein, Litigating Defendants and Litigating Relief Defendants, their officers, agents, servants, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other Persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants or Relief Defendants, and all others acting for or on behalf of such Persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants, including:

A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding.

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Defendants, including the issuance or employment of process against the Receivership Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.     Filing or enforcing any lien on any asset of the Receivership Defendants, taking or attempting to take possession, custody, or control of any asset of the Receivership Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership

Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

D.    Initiating any other process or proceeding that would interfere with the Receiver managing or taking custody, control, or possession of, the Assets or Documents subject to this receivership.

**PROVIDED** that, this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XX.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXI. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $1,000,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXII. ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the Receiver to preserve Assets and business records, the Receiver and his agents and assistants, shall have immediate access to the business premises, storage facilities, and records owned, controlled, or used by the Receivership Defendants. The Receiver and his representatives, agents, and assistants are authorized to obtain the assistance of the U.S. Marshal's office and other federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order.

The Receiver and his representatives, agents, and assistants, are authorized to remove Documents from the Receivership Defendants' premises in order that they may be inspected, inventoried, and copied for the purpose of preserving discoverable material in connection with this action.

The Receiver shall allow the FTC, Defendants, and Relief Defendants reasonable access to the premises and records of the Receivership Defendants within his possession for the purpose of inspecting and copying materials relevant to this action. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XXIII. DISTRIBUTION OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that Litigating Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, spouse, subsidiary, division, and representative of Litigating Defendants, and shall, within ten (10) days from the date of entry of this Order, and provide the Commission and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such Person or entity who received a copy of the Order. Furthermore, Litigating Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other Persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIV. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, or by U.S. Mail and/or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any Person (including any financial institution) that may have possession, custody or control of any property, property right, Document, or Asset of any Defendant or Relief Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity. This Order shall bind Persons (including

entities) that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure upon such Person's receipt of actual notice, by personal service or otherwise, of this Order. *See* FED. R. CIV. P. 65(d)(2).

## XXV. CORRESPONDENCE AND SERVICE ON THE COMMISSION

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on the Commission shall be addressed to:

> Janice Kopec
> Dotan Weinman
> Federal Trade Commission
> 600 Pennsylvania Avenue NW
> Mail Stop CC-8528
> Washington, DC 20580
> (202) 326-2550 (Kopec phone)
> (202) 326-3049 (Weinman phone)
> (202) 326-3395 (fax)
> jkopec@ftc.gov
> dweinman@ftc.gov

## XXVI. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

## XXVII. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the First Motion **[ECF No. 66]** and Second Motion **[ECF No. 67]** are **GRANTED** as stated herein.

**DONE AND ORDERED** in Miami, Florida, this 26th day of January, 2015.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:     counsel of record